# United States Court of Appeals for the Federal Circuit


2007-3224


PETER J. LIZZIO,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Lawrence A. Berger, Mahon & Berger, of Glen Cove, New York, argued for petitioner.

Hillary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3224

PETER J. LIZZIO,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Petition for review of the Merit Systems Protection Board in PH-0752-06-0546-I-1.

---

DECIDED: July 16, 2008

---

Before NEWMAN, SCHALL, and LINN, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Peter J. Lizzio petitions for review of the final decision of the Merit Systems Protection Board ("Board") that dismissed for lack of jurisdiction his appeal of the action of the Department of the Army ("agency") removing him from his position as a special agent with the Major Procurement Fraud Unit of the agency's Criminal Investigation Command ("CID"). <u>Lizzio v. Dep't of the Army</u>, 105 M.S.P.R. 322 (2007) ("<u>Final Decision</u>"). The agency removed Mr. Lizzio from his position because it determined that he had breached a last chance agreement that he entered into with the agency in settlement of a previous removal action. The last chance agreement contained a waiver of appeal rights. Mr. Lizzio appealed his removal to the Board. Following a hearing on

the issue of jurisdiction, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision in which she held that the waiver of appeal rights in the last chance agreement was unenforceable. She did so after ruling that Mr. Lizzio had established that he had not committed the breach of the last chance agreement asserted by the agency in its Notice of Intention to Invoke the last chance agreement (the "notice of breach"). Lizzio v. Dep't of the Army, PH-0752-06-0546-I-1, slip op. at 14 (M.S.P.B. Oct. 18, 2006) ("Initial Decision"). She therefore reversed the removal action. Id. Following the Initial Decision, the Board granted the agency's petition for review, reversed the Initial Decision, and dismissed Mr. Lizzio's appeal. See generally Final Decision. Contrary to the AJ, the Board determined that Mr. Lizzio had failed to establish that the waiver of appeal rights was unenforceable by demonstrating that he had not breached the last chance agreement. Id. at 331.

Because we hold that the Board erred in its analysis by relying on a ground for breach of the last chance agreement different from the one found by the AJ to have been asserted by the agency in the notice of breach, we vacate the Final Decision. The case is remanded to the Board for further proceedings consistent with this opinion.

BACKGROUND

I.

On October 6, 2005, Wesley Kilgore, the Director of the Major Procurement Fraud Unit, issued a decision to remove Mr. Lizzio from his position as a special agent. Id. at 324–25. The grounds asserted for the action were that Mr. Lizzio had been insubordinate and had engaged in conduct unbecoming a federal employee. Id. Rather than immediately remove Mr. Lizzio, however, the agency entered into a last chance

agreement with him. Id. at 325. In paragraph 2a of the agreement, Mr. Lizzio agreed to "[a]void any misconduct" in exchange for the agency's agreement to hold in abeyance his removal for a period of one year and to cancel the proposed removal if he refrained from "misconduct" for the one year period. Id. The last chance agreement further provided that any "misconduct" on the part of Mr. Lizzio would constitute a breach of the agreement and would permit the agency to immediately execute its original decision to remove him from employment. Id. In that regard, paragraph 4 of the agreement stated: "If the employee fails to comply with any of his obligations under this Agreement, the Agency will end the abeyance agreed to in this Agreement, and execute the original decision to remove the employee." Finally, the last chance agreement provided for a waiver of Mr. Lizzio's appeal rights. Id. Specifically, in paragraph 2b(2) of the agreement, Mr. Lizzio agreed "not to contest or appeal any subsequent removal action and other actions taken under this agreement." In addition, in paragraph 2b(3), he waived "his right to file a grievance, appeal to the Merit Systems Protection Board and appeal to the Equal Employment Opportunity Commission for actions taken under the agreement and actions prior to the signing of this agreement."

## II.

On April 10, 2006, after he had entered into the last chance agreement, Mr. Lizzio and two other agents visited a General Electric ("GE") facility in Fairfield, Connecticut, in order to interview a GE employee who was a witness in a procurement fraud investigation. Id. As discussed more fully below, while attempting to gain access to the witness, Mr. Lizzio engaged in a confrontation with GE security officers. Id. The following day, a GE employee reported the incident to the Major Procurement Fraud

Unit, which led to an inquiry by the agency's Standards of Conduct Office ("SOCO"). Id. The SOCO inquiry ultimately produced a report concluding that Mr. Lizzio had "'failed to maintain the highest standards of personal conduct and professionalism to avoid embarrassment to the Army and the government,'" in violation of Army Regulation ("AR") 195-3 and Criminal Investigation Division Regulation ("CIDR") 195-1. Id. at 325–26. As a result, on June 2, 2006, Mr. Kilgore issued to Mr. Lizzio the notice of breach. The notice stated:

> On 9 May 2006 I received a report of an investigation from the Standards of Conduct Office (SOCO), U.S. Army Criminal Investigation Command, conducted as a result of allegations made against you for failing to maintain the standards of personal conduct and professionalism as directed by AR 195-3 and CIDR 195-1 and a possible violation of the Joint Ethics Regulation and CIDR 195-1.[1] The SOCO conclusion was that you engaged in misconduct by failing to maintain the standards of personal conduct and professionalism required by AR 195-3 and CIDR 195-1. I have reviewed the investigation and the supporting documentation and have determined that you did engage in misconduct. As a result of that misconduct I also concluded that you failed to comply with paragraph 2a of the Last Chance Agreement you signed on 15 December 2005.

On June 8, 2006, the agency removed Mr. Lizzio. Id. at 326.

III.

Mr. Lizzio appealed his removal to the Board, arguing that he had not breached the last chance agreement and that the agency therefore was not entitled to invoke the waiver of appeal rights in paragraph 2b against him.

---

[1]     AR 195-3 provides in relevant part that all agency employees must "maintain the highest standards of personal conduct and professionalism to . . . avoid embarrassment to the Army and the Government."  CIDR 195-1 provides in relevant part that "any agent who is considered substandard in performance or conduct [or] deficient in character . . . can be eliminated."

Before the Board, Mr. Lizzio bore the burden of establishing, by a preponderance of the evidence, that the Board had jurisdiction to consider his appeal. Link v. Dep't of the Treasury, 51 F.3d 1577, 1581 (Fed. Cir. 1995); 5 C.F.R. § 1201.56(a)(2) (2006). Though the Board lacks jurisdiction whenever a person waives his or her appeal rights in a last chance agreement, Link, 51 F.3d at 1581; McCall v. United States Postal Serv., 839 F.2d 664, 668 (Fed. Cir. 1988), an appellant may nonetheless establish jurisdiction by demonstrating that he or she complied with the agreement, that the agency breached it, or that he or she did not knowingly and voluntarily enter into the agreement. Link, 51 F.3d at 1582.

As noted, following a hearing on jurisdiction, the AJ issued an initial decision reversing the agency's removal action. Initial Decision at 14. In her decision, the AJ considered Mr. Lizzio's conduct on April 10, 2006. As noted, on that date, Mr. Lizzio and two other agents drove to a GE facility in Fairfield, Connecticut, in order to interview a GE employee who was a witness in a procurement fraud investigation. Id. at 5. Upon arrival at the GE facility, Mr. Lizzio and the other agents presented their credentials to a security guard at the entrance. Id. at 9. After a fifteen minute delay, Mr. Lizzio exited his vehicle, whereupon he encountered a supervisory security officer, who directed Mr. Lizzio to return to his vehicle. Id. Though the testimony before the AJ differed as to Mr. Lizzio's precise conduct during his in-person discussions with the security guards following his exit from his vehicle, he acknowledged that he took an "'insistent' and 'persistent' approach" with the security guards. Id. at 11. After returning to his vehicle, Mr. Lizzio telephoned a GE finance manager. Id. at 10–11. The manager testified that

Mr. Lizzio acted in a "'rude and condescending'" and "'unprofessional'" manner during the telephone conversation. Id. at 11.

The security officers with whom Mr. Lizzio dealt testified that, though Mr. Lizzio's conduct may have been "'an embarrassment to himself [Mr. Lizzio],'" they did not conclude that Mr. Lizzio represented all federal employees or otherwise embarrassed the federal government. Id. At the same time, an eyewitness to the events described Mr. Lizzio as "'heated'" and "'aggravated'" during his exchange with the security guards, but he stated that Mr. Lizzio did not raise his voice or abuse his authority. Id. at 13.

Although Mr. Kilgore's letter cited both AR 195-3 and CIDR 195-1, the AJ determined that, based on Mr. Kilgore's testimony, the agency relied solely upon AR 195-3 in determining that Mr. Lizzio had committed misconduct in violation of the last chance agreement. Id. at 8 (noting that Mr. Kilgore admitted that "embarrassment to the agency and the government constitutes a 'material' element to his finding [Mr. Lizzio] engaged in misconduct," and further noting that the only standard cited in the notice letter which refers to "embarrassment" to the agency and the government is AR 195-3, paragraph 4-1(a)(3)). Despite the notice letter's explicit references to CIDR 195-1, the AJ stated that she was "unimpressed with [Mr. Kilgore's] testimony that he gave significant weight to any other agency standards of conduct because such testimony conflicts with the actual notice of intention to invoke the [last chance agreement] issued to [Mr. Lizzio]." Id. Thus, the AJ confined her analysis to the question of whether Mr. Lizzio had breached the last chance agreement by engaging in conduct that

embarrassed the government.[2]  After considering the evidence, the AJ found that, although Mr. Lizzio's conduct on April 10, 2006 was "rude and obnoxious," it was not embarrassing to the government.  Id. at 12.  The AJ stated:

> The appellant may have been rude in the dispatch of his responsibilities as a federal law enforcement official conducting an investigation during a brief encounter with various individuals at GE.  However, the agency did not find the appellant had failed to avoid rudeness when it issued the appellant notice of his removal for violation of the [last chance agreement].  Instead, the agency's determination the appellant violated the [last chance agreement] was based on its regulation which requires that individuals assigned to the CID Program maintain the highest standards of personal conduct and professionalism to avoid embarrassment to the Army and the Government.

Id. at 13.  Accordingly, the AJ concluded that Mr. Lizzio had not breached the last chance agreement and that the agency could not invoke the appellate rights waiver in the agreement.  Id. at 14.  The AJ therefore reversed the agency's removal of Mr. Lizzio.  Id.

The agency petitioned for review of the Initial Decision.  In so doing, it argued, inter alia, that Mr. Lizzio's conduct was in fact embarrassing to the government and that his removal was therefore proper under AR 195-3.  In the Final Decision, the Board reversed the Initial Decision and dismissed Mr. Lizzio's appeal for lack of jurisdiction.  Final Decision, 105 M.S.P.R. at 331.  The Board stated:

> The agency has challenged the administrative judge's finding that the appellant's conduct on April 10, 2006 did not violate AR 195-3.  We need not decide this issue, however, as we find that the administrative judge erred in limiting the issue of the appellant's compliance to the grounds relied upon by Mr. Kilgore in his determination that the appellant had engaged in misconduct.

---

[2]     As noted, AR 195-3 provides in relevant part that all agency employees must "maintain the highest standards of the personal conduct and professionalism to . . . avoid embarrassment to the Army and the Government."

The principle that the Board is required to review an agency's decision on an adverse action solely on the grounds invoked by the agency does not apply to the agency's notice of intention to invoke the [last chance agreement]. Where a removal action is held in abeyance by [a last chance agreement], and the appellant commits a breach of the [agreement], the result is not a new adverse action, but reinstatement of the removal that had been held in abeyance. The penalty of removal is then a product of the former misconduct, rather than the breach itself. Thus, there are no due process concerns at stake with regard to the agency's invocation of the [last chance agreement], as it is undisputed that the appellant received notice and an opportunity to respond to the charges that were the basis of the original removal action.

Id. at 330 (internal citations omitted). The Board rejected Mr. Lizzio's argument that relying on a ground for breach of the last chance agreement different from the one found by the AJ to have been asserted by the agency in the notice of breach constituted a violation of due process. Id. at 331. The Board stated:

Thus, we conclude that we are free to rely on a different ground than the agency did in determining whether the appellant established by a preponderance of the evidence that he complied with the [last chance agreement]. Regardless of whether the appellant violated AR 195-3, rude and discourteous behavior toward members of the public constitutes misconduct. See, e.g., Lednar v. Soc. Sec. Admin., 82 M.S.P.R. 364, 371–72 (1999). Thus, the finding of the administrative judge that the appellant was "rude and obnoxious" during his encounter with the GE security guards on April 10, 2006, is sufficient to establish that the appellant failed to meet his burden of showing that he did not breach the agreement. Accordingly, we uphold the waiver provision at ¶ 2(b)(3) of the [last chance agreement], and dismiss the appeal for lack of jurisdiction.

Final Decision, 105 M.S.P.R. at 331.[3]

---

[3] Prior to the hearing, the AJ determined that the waiver of appeal rights in paragraph 2b(2) of the last change agreement ("Employee waives the right to appeal or contest a supervisor's determination of future misconduct and agency action based upon misconduct for one year.") was unenforceable as a matter of public policy, on the grounds that "'operation of such a waiver would supplant the Board's authority to determine its own jurisdiction over the challenged employment action.'" Final Decision, 105 M.S.P.R. at 327. The Board agreed with the AJ's ruling on this point, id. at 328, and neither party has raised the issue on appeal.

DISCUSSION

We have jurisdiction over Mr. Lizzio's appeal pursuant to 28 U.S.C. § 1295(a)(9). Pursuant to 5 U.S.C. § 7703(c), we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See also Kewley v. Dep't of Health & Human Servs., 154 F.3d 1357, 1361 (Fed. Cir. 1998). The determination of whether the Board has jurisdiction over an appeal is a question of law that we review de novo. Hayes v. United States Postal Serv., 390 F.3d 1373, 1376 (Fed. Cir. 2004).

I.

On appeal, Mr. Lizzio argues that he established before the AJ that he had not breached the last chance agreement, thereby preventing the agency from invoking the waiver of appeal rights in paragraph 2b of the agreement. Turning to the Final Decision, he contends that the Board improperly relied upon a ground for breach that was neither cited by the agency in its decision to remove him nor adjudicated by the AJ in the Initial Decision. Mr. Lizzio notes that the AJ concluded that the only ground for breach properly cited by the agency was a violation of AR 195-3, which requires CID employees to "maintain the highest standards of personal conduct and professionalism to . . . [a]void embarrassment to the Army and the Government." Mr. Lizzio contends that Board case law makes it clear that the Board must review a removal action based upon the grounds cited by the agency and cannot substitute what it deems a more appropriate justification. See, e.g., Shaw v. Dep't of the Air Force, 80 M.S.P.R. 98, 106–107 (1998) ("[T]he Board is required to adjudicate an appeal solely on the grounds

invoked by the agency, and it may not substitute what it considers to be a more appropriate charge."). According to Mr. Lizzio, since the Board relied upon a different ground for breach than the one found by the AJ to have been asserted by the agency in the notice of breach, he was deprived of due process.

The government responds that Mr. Lizzio's alleged misconduct on April 10, 2006 was not a separate charge upon which the agency relied to remove him. Rather, it was merely the event that triggered the agency's decision to proceed with the removal action originally proposed. According to the government, Mr. Lizzio was not entitled to "pre-termination notice" in connection with the agency's decision to implement the provisions of the last chance agreement. The government states: "Mr. Lizzio received pre-termination notice and an opportunity to respond to the charges upon which the agency based his removal which led to the [last chance agreement]." Appellee's Br. 14. The government cites our decisions in Girani v. Federal Aviation Administration, 924 F.2d 237 (Fed. Cir. 1991), and Baker v. Department of Transportation, 418 F.3d 1369 (Fed. Cir. 2005) for the proposition that an employee who breaches a last chance agreement is removed as a consequence of the initial misconduct that led to the entry of the agreement. The government reasons that an employee who signs a last chance agreement has no due process rights with respect to later misconduct justifying invocation of the agreement.[4]

_____

[4] The government's position is similar to the Board's in the Final Decision. As seen, the Board stated:

Where a removal action is held in abeyance by [a last chance agreement], and the appellant commits a breach of the [agreement], the result is not a new adverse action, but reinstatement of the removal that had been held in abeyance. The penalty of removal is then a product of the former

II.

Paragraph 4 of the last chance agreement provided in pertinent part as follows: "If the employee fails to comply with any of his obligations under this Agreement, the Agency will end the abeyance agreed to in this Agreement, and execute the original decision to remove the employee." In short, if Mr. Lizzio breached the agreement, the agency would put back into place the October 6, 2005 removal for insubordination and conduct unbecoming a federal employee. Thus, as the government notes, a breach of the last chance agreement on Mr. Lizzio's part would serve as a trigger for reinstatement of the previous removal action. At the same time, in paragraph 2b of the last chance agreement, Mr. Lizzio waived his right to appeal the reinstated removal action.

That does not resolve the matter, however. Mr. Lizzio could render unenforceable the waiver of appeal rights and thereby enable the Board to exercise jurisdiction by establishing that he did not breach the last chance agreement. "[T]o establish Board jurisdiction, [an appellant has] the burden of proving that he did not breach the agreement." Gilbert v. Dep't of Justice, 334 F.3d 1065, 1070 (Fed. Cir. 2003); see also Link, 51 F.3d at 1582 ("[Appellant] could overcome his waiver of appeal rights by proving that he complied with the last-chance agreement . . . ."); Rogers v. United States Postal Serv., 59 M.S.P.R. 647, 651 (1993) ("[T]he appellant was required

---

misconduct, rather than the breach itself. Thus, there are no due process concerns at stake with regard to the agency's invocation of the [last chance agreement], as it is undisputed that the appellant received notice and an opportunity to respond to the charges that were the basis of the original removal action.

Final Decision, 105 M.S.P.R. at 330.

to show that the appeal-rights waiver should not be enforced against him because he did not violate the agreement. . . .").

If, as a matter of law, an appellant may establish Board jurisdiction in the face of a last chance agreement by establishing that he or she did not breach the agreement, it necessarily follows that, to be able to exercise that right, the appellant must be told in what way he or she allegedly breached the agreement. Otherwise, the appellant will not know what he or she has to prove was not done. This is nothing more than what due process requires. See Licausi v. Office of Pers. Mgmt., 350 F.3d 1359, 1363 n.1 (Fed. Cir. 2003) (pointing out that both this court and the Board have recognized "the due process principle that a person must be given notice of the charge on which the action against him is based"). This principle applies when an employee is charged with breach of a last chance agreement. Otherwise, an employee will not be able to exercise his right to "overcome his waiver of appeal rights by proving that he complied with the last chance agreement." Link, 51 F.3d at 1582.

Thus, we agree with the Board and the government that the alleged breach of the last chance agreement in this case was not a separate charge, but rather the event that triggered the reinstatement of the original charge. However, we do not agree with them that Mr. Lizzio was not entitled to notice with respect to the alleged breach. He was entitled to notice in the form of being told what his alleged breach was. In this case, the agency met that obligation when it sent Mr. Lizzio the notice of breach, informing him that he had breached the agreement on April 10, 2006 "by failing to maintain the standards of personal conduct and professionalism required by AR 195-3 and CIDR 195-1." AR 195-3 requires employees to "[a]void embarrassment to the Army and the

Government," while CIDR 195-1 provides for the elimination of agents "considered substandard in performance or conduct, deficient in character, or otherwise unsuited for the [United States Army Criminal Investigation Division Command] program." As noted, the AJ found, based upon the testimony of Mr. Kilgore, that the ground asserted by the agency in the notice of breach was that Mr. Lizzio had engaged in conduct embarrassing to the government, in violation of AR 195-3.

The AJ concluded that Mr. Lizzio had not breached the last chance agreement. Initial Decision at 14. Focusing upon the alleged breach cited by Mr. Kilgore (misconduct in failing to comply with AR 195-3), the AJ concluded that, though "rude and obnoxious," Mr. Lizzio's conduct could not have embarrassed the government and therefore did not justify invocation of the last chance agreement. Id. at 12–14. Thereafter, in response to the agency's petition for review, rather than disturbing the AJ's finding that the agency asserted in the notice of breach that Mr. Lizzio breached the agreement by engaging in conduct embarrassing to the government or her finding that Mr. Lizzio's conduct did not embarrass the government, the Board relied upon a ground for breach different from the one found by the AJ to have been asserted by the agency in the notice of breach. Thus, the Board concluded that "rude and obnoxious" behavior comprised "misconduct" within the meaning of the last chance agreement and therefore justified the agency's invocation of the agreement and removal of Mr. Lizzio for his prior misconduct. Final Decision, 105 M.S.P.R. at 331.

We hold that, in the Final Decision, the Board erred in its reliance on a ground for breach different from the one found by the AJ to have been asserted by the agency in the notice of breach. In Gose v. United States Postal Service, 451 F.3d 831 (Fed. Cir.

2006), where an employee was removed pursuant to a last chance agreement, we rejected the government's argument that we could sustain the removal action on the basis of statutory provisions that the employee may have violated but that were not cited as grounds for removal in the proceedings, id. at 839 n.4. We stated: "We reject the agency's argument that we can sustain its removal action based on Gose's alleged violations of other statutory provisions. Agency action must be sustained, if at all, on the actual grounds relied on by the agency." Id. As we noted in Licausi, "[a]lthough that principle has frequently been recognized by this court and the Board, it is not so much an application of the Chenery doctrine as an application of the due process principle that a person must be given notice of the charge on which the action against him is based." Licausi, 350 F.3d at 1363 n.1.[5] Here, the AJ found, as a matter of fact, that the agency's asserted ground in the notice of breach for breach of the last chance agreement was conduct "embarrassing" to the government. Significantly, the Board did not disturb that finding. By not disturbing that finding and by relying upon a ground for breach ("rude and obnoxious" behavior) different from the one found by the AJ to have been asserted by the agency in the notice of breach (conduct "embarrassing" to the government), the Board effectively deprived Mr. Lizzio of his right to establish Board jurisdiction by proving that he did not breach the last chance agreement by engaging in

---

[5] The Chenery cases, Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943), and Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947), stand for the proposition that "a reviewing court, in dealing with a determination or judgment which an administrative agency is alone authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency," id. at 196.

the conduct found by the AJ to have been asserted by the agency in the notice of breach.[6]

We do not agree with the government that our decisions in <u>Girani</u> and <u>Baker</u> compel a different result. In <u>Girani</u>, an employee of the Federal Aviation Administration ("FAA"), Robert Girani, entered into a last chance agreement in lieu of being removed for using cocaine. 924 F.2d at 239. Under the agreement, the FAA agreed to delay Girani's removal pending successful completion of a rehabilitation program. <u>Id.</u> The agreement required Girani to attend Alcoholics Anonymous meetings and to refrain from reporting for work under the influence of alcohol or drugs. <u>Id.</u> The agreement further provided that "'any further involvement . . . with illegal mind-altering substances, or failure to adhere to any of the terms of this letter, will result in separation.'" <u>Id.</u> Less than a year after entering into the agreement, Girani was arrested for driving under the influence. <u>Id.</u> Consequently, the FAA removed him for having violated the conditions of the last chance agreement as they related to his rehabilitation program. <u>Id.</u> Girani submitted his case to arbitration. <u>Id.</u> at 240. After the arbitrator sustained his removal, Girani appealed to this court, arguing that the FAA removed him without providing notice under 5 U.S.C. § 7513(b) that he was being removed for alcohol consumption.[7] <u>Id.</u> at 240–41. Specifically, though Girani conceded that he received all process

---

[6] <u>Lednar v. Social Security Administration</u>, 82 M.S.P.R. 364 (1999), cited by the Board, is inapposite. The Board recognized there that rude and discourteous behavior by a government employee may constitute misconduct. <u>Id.</u> at 371–72. The issue presented by this case is entirely different: whether, in the <u>Final Decision</u>, the Board erred by relying on a ground for breach of the last chance agreement not found by the AJ to have been asserted by the agency in the notice of breach.

[7] Section 7513(b) provides that an employee is entitled to (1) 30 days' written notice of the proposed removal, (2) a "reasonable time" to respond to the notice, (3) legal representation, and (4) a written decision from the agency of the "specific reasons" for the removal.

required by section 7513(b) insofar as the original proposed removal for cocaine usage was concerned, he argued that the FAA violated section 7513(b) by removing him for a reason for which he was never given notice, i.e., alcohol consumption. Id. at 241.

We affirmed the arbitrator's decision sustaining Girani's removal. Id. at 241–42. In so doing, we rejected Girani's argument that he was entitled to the procedural safeguards of 5 U.S.C. § 7513(b) in connection with his alcohol usage. Id. at 241. We stated:

> We are unpersuaded by petitioner's argument. It is based on the faulty premise that alcohol consumption was a separate disciplinary charge against him, therefore entitling him to a new notice of proposed removal and all of the other procedural safeguards of § 7513(b). Alcohol use, however, was not a separate charge, but was merely the evidence relied on by the FAA to demonstrate that petitioner had breached the "last chance" agreement.

Id. Finally, we added that there was substantial evidence in the record that Girani was aware that his alcohol consumption was the FAA's reason for removing him. Id. at 242.

In Baker, Rex Baker, an Air Traffic Control Specialist with the FAA, entered a substance abuse rehabilitation/treatment program following his arrest for possession of a controlled substance and his proposed removal by the FAA for that offense. 418 F.3d at 1371–72. In a memorandum that he received, Baker was informed that, in deciding whether to remove him, the FAA would give consideration to his successful completion of the treatment program. Id. at 1372. Subsequently, after Baker was discharged from a treatment facility for alleged use of drugs, the FAA removed him from his position. Id. at 1373. Baker appealed his removal to the Board, arguing, inter alia, that the FAA committed harmful procedural error by removing him following his failure to complete the rehabilitation program without issuing a second notice of proposed removal. Id. at

1374. The Board affirmed Baker's removal.  Id.  The Board determined that the FAA was not required to issue a second notice of proposed removal in that Baker conceded that the FAA removed him on the basis of his prior controlled substance possession, not on the basis of his discharge from the treatment facility.  Id.  Baker then appealed his removal to this court.

On appeal, we affirmed the decision of the Board, rejecting Baker's argument that he was entitled to a second notice of proposed removal.  We stated:

> The reasoning of Girani applies here.  Mr. Baker's failure to complete the rehabilitation/treatment program was not a separate charge upon which the agency relied in order to remove him.  Instead, Mr. Baker's discharge from [the treatment facility] was merely the event that triggered the agency's decision to proceed with the removal action originally proposed . . . .  Accordingly, we conclude that Mr. Baker was not entitled to a new notice of proposed removal.

Id.

The government's reliance on Girani and Baker is misplaced.  Both cases simply stand for the proposition that, when an agency removes an employee from his or her position following breach of a last chance agreement, the breach is the trigger for the reinstatement of the original removal action and, consequently, a second formal notice of removal is not required.  Neither Girani nor Baker involved the situation presented in this case: the Board rejecting an AJ's finding that there was no breach of a last chance agreement by relying on a ground for breach different from the one found by the AJ to have been asserted by the agency in the notice of breach, a finding not disturbed by the Board.

CONCLUSION

In sum, the Board erred when, in the Final Decision, it relied on a ground for breach of the last chance agreement—conduct on Mr. Lizzio's part that was "rude and obnoxious"—different from the ground found by the AJ to have been asserted by the agency in the notice of breach—conduct on Mr. Lizzio's part that was "embarrassing" to the government, a finding not disturbed by the Board. In so doing, the Board deprived Mr. Lizzio of due process. See Gose, 451 F.3d at 839 n.4; Licausi, 350 F.3d at 1363 n.1. We therefore vacate the Final Decision and remand the case to the Board so that, after receiving the views of the parties, the Board may consider anew the grounds for reversal of the Initial Decision advanced by the agency in its petition for review. We do so because the Board rested the Final Decision solely upon the ground that Mr. Lizzio engaged in rude and obnoxious behavior. Among other things, it declined to review the AJ's finding that the agency charged Mr. Lizzio with breaching the last chance agreement by engaging in conduct that embarrassed the agency, or her finding that his conduct on April 10, 2006 did not embarrass the agency. Final Decision, 105 M.S.P.R. at 330 ("The agency has challenged the administrative judge's finding that the appellant's conduct on April 10, 2006 did not violate AR 195-3. We need not decide this issue, however, as we find that the administrative judge erred in limiting the issue of appellant's compliance to the grounds relied upon by Mr. Kilgore in his determination that the appellant had engaged in misconduct."). The agency is entitled to have the Board decide, under the proper standard, the arguments it presented in its petition for

review.[8]  Finally, if on remand the Board affirms the <u>Initial Decision</u>, after receiving the

views of the parties, it should determine the relief to which Mr. Lizzio is entitled.

_____

[8]     In the <u>Final Decision</u>, the Board stated that, in its petition for review, the agency argued that the <u>Initial Decision</u> should be reversed for the following reasons:

(1) the administrative judge erred in ruling ¶ 2(b)(2) of the [last chance agreement] unenforceable and proceeding to address the appellant's claim that he did not engage in misconduct;

(2) the administrative judge improperly limited the issue of the appellant's compliance with the [last chance agreement] to the specific misconduct cited in the [Standards of Conduct Office] report;

(3) the administrative judge misapplied AR 195-3 by inquiring as to whether the appellant's action caused embarrassment, instead of whether the appellant failed to "maintain the highest standards of personal conduct and professionalism";

(4) the administrative judge erred in concluding that the appellant's conduct, which she found to be "rude and obnoxious," was insufficient to establish embarrassment to the agency and the government;

(5) the administrative judge failed to apply the principle that law enforcement officers are held to a higher standard than ordinary employees;

(6) the administrative judge erred in her credibility determination by relying upon selected witnesses; and

(7) the agency acted in good faith in accordance with the provisions of the [last chance agreement].

<u>Final Decision</u>, 105 M.S.P.R. at 327.  After receiving the views of the parties, the Board should address arguments (2)–(7) above in the agency's petition for review.  In so doing, the Board should first consider any challenge by the agency in the petition for review to the AJ's presently undisturbed finding that the agency asserted in the notice of breach that Mr. Lizzio breached the last chance agreement by engaging in conduct embarrassing to the government.  The Board should also consider any challenge to the AJ's presently undisturbed finding that Mr. Lizzio's conduct on April 10, 2006 was not embarrassing to the government.  That is because, as seen, these findings of fact have been determinative of our disposition of this appeal.  Finally, argument (1) above is not to be considered by the Board because it was rejected in the <u>Final Decision</u> and has not been raised by either party on appeal.  <u>See</u> <u>supra</u> note 3.

<u>VACATED</u> and <u>REMANDED</u>